# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT SALONE,<br><br>    Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>    Defendant. | NO. CV 04-8329 FMO<br><br><br><br>**ORDER RE:  JOINT STIPULATION** |

## PROCEEDINGS

Plaintiff filed a Complaint on October 7, 2004, seeking review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act, 42 U.S.C. § 405(g) ("Act").  The parties consented to proceed before the undersigned United States Magistrate Judge on November 3, 2004.  Thereafter, on July 20, 2005, the parties filed a Joint Stipulation ("Joint Stip.").  The court has taken the matter under submission without oral argument.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To be eligible for disability benefits, a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which

is expected to result in death or to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

Disability claims are evaluated using a five-step test:

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1? If so, the claimant is automatically determined to be disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. § 416.920; Tackett, 180 F.3d at 1098-99. If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps. 20 C.F.R. § 404.1520; Tackett, 180 F.3d at 1098.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Plaintiff was 51 years of age at the time of his administrative hearing. (Administrative Record ("AR") at 113 & 388). He has completed high school and one year of college. (Id. at 113 & 181). His past relevant work includes employment as a road maintenance worker, cement finisher, and laborer. (Id. at 113 & 176).

Plaintiff filed for DIB on October 3, 2001, claiming that he has been disabled since April 11, 1996, due to high blood pressure and a left knee injury. (AR at 112-13 & 175). His application was denied initially and on reconsideration. (Id. at 112, 127-30 & 133-36).

On March 18, 2003, plaintiff, represented by counsel, testified at a hearing before an ALJ. (AR at 386-421). The ALJ also heard testimony from Stephen Berry, a vocational expert ("VE"). (Id.).

The ALJ denied plaintiff's request for DIB on July 14, 2003. (AR at 112-119). Applying the five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Id. at 113 & 118). At step two, the ALJ found that plaintiff suffers from a combination of severe medical impairments, consisting of "internal derangement of the left knee, status post left knee joint replacement, obesity, asthma, resistant hypertension [high blood pressure], and leg edema[1] of uncertain etiology." [2] (Id. at 115 & 118). At step three, the ALJ determined that plaintiff's impairments did not meet or equal the severity of any listing set forth in the Social Security regulations.[3] (Id.).

At step four, the ALJ assessed plaintiff's residual functional capacity[4] ("RFC"). (AR at 116 & 119). The ALJ found that plaintiff retained the RFC "to perform a significant range of light work." (Id. at 119). Specifically, the ALJ determined that plaintiff can "lift or carry twenty pounds occasionally or ten pounds frequently; stand or walk six hours per eight-hour workday with customary breaks; sit at least six hours per eight-hour workday with customary breaks; and climb, balance, stoop, kneel, crouch[ ], or crawl occasionally." (Id. at 116 & 118). Based on this RFC, the ALJ determined that plaintiff could not perform his past relevant work, which "requires a capacity for more than light work in terms of lifting and carrying." (Id.).

At step five, the ALJ applied the Medical-Vocational Guidelines ("Grids") to plaintiff's vocational profile – age, education and past relevant work – and heard testimony from the VE to conclude that plaintiff could work as "cashier II, inspector, and order clerk." (AR at 116-17 & 119). Based upon this five-step analysis, the ALJ concluded that plaintiff was not suffering from a disability as defined by the Act. (Id. at 119).

---

[1] "Edema" is defined as "[a]n accumulation of an excessive amount of watery fluid in cells, tissues, or serous cavities." Stedman's Medical Dictionary (26th ed. 1995) at 544.

[2] "Etiology" is defined as "[t]he science and study of the causes of disease and their mode of operation." Stedman's Medical Dictionary at 603.

[3] See 20 C.F.R. Pt 404, Subpt. P, App. 1.

[4] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. (AR at 109-11). The ALJ's decision stands as the final decision of the Commissioner.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision must be upheld if they are free of legal error and supported by substantial evidence. Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001). If the court, however, determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." Aukland, 257 F.3d at 1035. It is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); see also Mayes, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." Mayes, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" Aukland, 257 F.3d at 1035 (quoting Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" Id. (quoting Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992)).

## DISCUSSION

I.  THE ALJ IMPROPERLY EVALUATED PLAINTIFF'S SUBJECTIVE COMPLAINTS.

Plaintiff asserts that the ALJ failed to provide clear and convincing reasons for rejecting his subjective complaints. (Joint Stip. at 3-7 & 13-14). Specifically, plaintiff contends that he "need not provide objective evidence of the degree of pain he suffers as he has a severe impairment and there is no evidence of malingering." (Id. at 5).

A claimant carries the burden of producing objective medical evidence of his or her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003) (citing Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986) (per curiam)). If the claimant is unable to present objective evidence of a medically determinable impairment, the ALJ is free to reject a claimant's symptom allegations.[5] See Cotton, 799 F.2d at 1407.

Once a claimant produces medical evidence of an underlying impairment which is reasonably likely to be the cause of the alleged symptoms, medical findings are not required to support the alleged severity of pain. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). The ALJ can then reject a claimant's allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton, 331 F.3d at 1040 (citing Bunnell, 947 F.2d at 345). The ALJ may consider the following factors in weighing a claimant's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his or her conduct; (3) his or her daily activities;[6] (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (citing Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997)). "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Id. at 959; see also Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) ("[T]he ALJ . . . is responsible for determining credibility[.]").

---

[5] A medically determinable impairment must "result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a] statement of symptoms." 20 C.F.R. § 416.908 (internal citations omitted).

[6] "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." Smolen v. Chater, 80 F.3d 1273, 1284 n. 7 (9th Cir. 1996).

Because there is no evidence of malingering in the instant case, the ALJ's reasons for rejecting plaintiff's credibility must be clear and convincing. See Benton, 331 F.3d at 1040-41. "General findings are insufficient." Reddick, 157 F.3d at 722 (internal quotation marks omitted). Rather, the ALJ must state which testimony is not credible and identify the evidence that undermines the claimant's complaints. Id.; Benton, 331 F.3d at 104; see also Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) ("findings 'must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony.'") (quoting Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001) (brackets in original).

"Generally, a claimant's credibility becomes important at the stage where the ALJ is assessing [RFC] because the claimant's subjective statements may tell of greater limitations than can medical evidence alone." Tonapetyan, 242 F.3d at 1147. Here, plaintiff testified that he was able to stand at most for 10 to 15 minutes, and walk half a block without resting. (AR at 408-409). On a pain scale of one to ten, with ten representing the most severe pain, plaintiff testified that walking or standing beyond his stated limits resulted in pain that he would rate as a six in his right knee, an eight in his left knee, and a ten in his back. (Id. at 410-411). Plaintiff takes Vicodin for the pain, anywhere from one or two to six or seven per day, depending on the severity of the pain. (Id. at 407). In addition, plaintiff has been using a cane to walk for about a year and a half, and is unable to use the crutches recommended by his treating physician due to underarm irritation. (Id. at 395). Since his knee replacement surgery, plaintiff is no longer active, which caused an increase in weight from plaintiff's former average of 180 to his current weight of 280 pounds. (Id. at 411-412).

In rejecting plaintiff's credibility,[7] the ALJ found that plaintiff's subjective complaints were disproportionate to the objective medical findings.[8] (AR at 115-16 & 118: "I must consider all

---

[7] The court notes that the ALJ only explicitly found that plaintiff's "allegations regarding his limitations [as] not totally credible" in the "Findings" section of her decision. (AR 118).

[8] Defendant set forth additional reasons to support the ALJ's rejection of plaintiff's credibility (e.g., "inconsistent statements" and non compliance with prescribed hypertension medications),

6

symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence"). Specifically, the ALJ held:

> I note that the claimant's testimony was consistent with a capacity for at least sedentary work[9] in terms of standing and walking even with the additional impairments developed since the end of the period at issue. The treating source findings from the period at issue indicated only that the claimant could perform a specific sedentary job and that he could not perform his strenuous customary that had required heavy lifting and carrying which would be consistent with the assessment of the consultative medical examiner in November 2001. I[,] however[,] give greater weight [to] the medical expert's findings in the post hearing interrogatories since that doctor, a Diplomate of the American Board of Orthopedic Surgery, had access to all the pertinent medical evidence of record, orthopedic and otherwise, and was better situated to evaluate the claimant's condition as a whole than any other medical source of record.
>
> Accordingly, I find the claimant prior to January 2002 retained, and never lost for any twelve month period, the following residual functional capacity: lift or carry twenty pounds occasionally or ten pounds frequently;

---

for the first time in the Joint Stipulation. (See Joint Stip. at 10-11). However, the ALJ did not rely on those reasons or evidence as a basis for discrediting plaintiff's credibility. The court's review is limited to the reasons actually cited by the ALJ in support of her determination. See Connett v. Barnhart, 340 F.3d 871 (9th Cir. 2003) ("It was error for the . . . court to affirm the ALJ's . . . decision based on evidence that the ALJ did not discuss."). "We are constrained to review the reasons the ALJ asserts." Id. (citing Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001).

[9] "Under 20 C.F.R. § 404.1567, sedentary work involves: lifting no more than 10 pounds at a time, and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. . . . Social Security Ruling 83-10 defines 'occasionally' as 'occurring very little up to one-third of the time.' '[P]eriods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.'" Aukland, 257 F.3d at 1035.

|   |   |
|---|---|
| 1 | stand or walk six hours per eight-hour workday with customary breaks; sit at |
| 2 | least six hours per eight-hour workday with customary breaks; and climb, |
| 3 | balance, stoop, kneel, crouch[ ], or crawl occasionally. |

(Id. at 116). Although the ALJ finds plaintiff's testimony "consistent with the capacity to perform at least sedentary work", (id.), she inexplicably concluded in the "Findings" portion of her decision that plaintiff "had the residual functional capacity to perform a significant range of light work during the period at issue."[10] (Id. at 119).

The court finds that the ALJ's conclusion that plaintiff's subjective complaints as to his limitations are inconsistent with the objective medical evidence is not supported by substantial evidence. With respect to plaintiff's left knee, the record reflects (and as the ALJ noted) that after sustaining an injury in 1994, plaintiff underwent arthroscopic[11] knee surgery in 1996 and 1998, and total left knee arthroplasty[12] in 1999. (AR at 114, 262, 275, 285 & 287-89). In addition, as the ALJ found, the "medical evidence shows that [plaintiff] has been obese"; "developed hyerptension"; "has reported a history of asthma since childhood"; and "has a history of arthroscopic surgery on the right knee and right elbow." (Id. at 114, 331-35, 345, 358, 362-64 & 382).

Where, as in this case, plaintiff submitted objective medical evidence establishing an impairment that could be reasonably expected to cause some pain or similar symptom, the ALJ could not discredit that testimony for the sole reason that the plaintiff's degree of pain was not fully supported by objective medical evidence. See Bunnell, 947 F.2d at 346-47 (error for ALJ to

---

[10] "As stated in the Social Security Act, work is considered light if it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b). Light work also involves frequent lifting or carrying of objects weighing up to ten pounds." Vertigan v. Halter, 260 F.3d 1044, 1053 (9th Cir. 2001) (internal quotation marks omitted)

[11] "Arthroscopy" is defined as "Endoscopic examination of the interior of a joint." Stedman's Medical Dictionary at 151.

[12] "Arthroplasty" is defined as "1. Creation of an artificial joint to correct ankylosis. 2. An operation to restore as far as possible the integrity and functional power of a joint." Stedman's Medical Dictionary at 150. "Ankylosis" is defined as "Stiffening or fixation of a joint as the result of a disease process, with fibrous or bony union across the joint." Id. at 93.

require plaintiff to adduce medical evidence sufficient to corroborate the severity of his alleged pain and other symptoms); 20 C.F.R. § 404.1529(c)(2) (subjective complaints regarding the severity and persistence of pain will not be rejected solely because available objective medical records do not substantiate plaintiff's statements).

Furthermore, the ALJ improperly evaluated the medical evidence to the extent she relied on it to discredit plaintiff's testimony. For example, the ALJ referred to the July 20, 2000, opinion of Dr. Jerome Wall, a treating physician, that plaintiff "could perform work as a real estate appraiser, which as described was clearly sedentary work." (AR at 115). However, the ALJ omitted Dr. Wall's physical limitations assessment which limited plaintiff to "sitting constantly, walking occasionally one hour, standing half an hour." (Id. at 248). In finding that plaintiff can walk and/or stand for six hours out of an eight hour day, the ALJ effectively rejected Dr. Wall's physical limitations assessment. (See id. at 116); See also Smith v. Massanari, 139 F.Supp.2d 1128, 1133 (C.D.Cal. 2001) ("Here, the Commissioner, in finding Jeanette's asthma is not severe, relied on the opinions of a consulting physician . . . and a non treating, nonexamining physician. In making this finding, the Commissioner implicitly rejected [the treating physician's] opinion[.]").

However, in rejecting Dr. Wall's assessment, the ALJ did not provide "specific and legitimate reasons" supported by substantial evidence in the record. See Lester, 81 F.3d at 830. Other than setting forth the findings of plaintiff's treating source, consultative physician, and the medical expert, (see AR at 16, the ALJ did not give any reasons, let alone specific and legitimate ones, for, in effect, rejecting Dr. Wall's opinion. Where, as here, the ALJ fails to give any reasons for disregarding the opinions of plaintiff's treating physicians, the ALJ's decision must be reversed. See Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987) ("We find nothing in the ALJ's decision which indicates why [the treating physician's] medical findings, reports, and opinion were disregarded. Because the ALJ did not state reasons based on substantial evidence, we reverse the decision to deny benefits.").

Finally, to the extent the ALJ gave "greater weight to the medical expert[, Dr. Lilian Chang]," (AR at 116), the ALJ erred in relying on Dr. Chang's opinion. Dr. Chang opined that plaintiff was limited "to light work with frequent standing and walking." (Id. at 115). Further, Dr. Chang opined

9

that plaintiff could walk or stand cumulatively for up to four hours in an eight-hour workday. (Id. at 335). Dr. Chang's opinion, however, contradicted the opinion of plaintiff's treating doctor, Dr. Wall, that plaintiff could walk occasionally up to one hour and stand half an hour. (Id. at 248). Under the circumstances here, Dr. Chang's opinion was insufficient to constitute substantial evidence. See Gallant, 753 F.2d at 1454 (When the non-treating, non-examining physician's opinion conflicts with the conclusions of examining physicians, that conclusion does not constitute substantial evidence.); Erickson v. Shalala, 9 F.3d 813, 818 n. 7 (9th Cir. 1993) ("the non-examining physicians' conclusion, with nothing more, does not constitute substantial evidence").

Further, even assuming Dr. Chang's opinion constituted substantial evidence, the opinion itself does not support the ALJ's RFC findings, as Dr. Chang opined that plaintiff could walk or stand cumulatively for up to four hours in an eight-hour workday, (AR at 335), leaving totally unexplained how the ALJ arrived at an RFC that provided for six hours of standing and/or walking. It appears that the ALJ reached a conclusion first and attempted to justify it by ignoring and/or misconstruing competent evidence that suggested a different result. See Gallant, 753 F.2d at 1450 ("Although it is within the power of the Secretary to make findings concerning the credibility of a witness and to weigh conflicting evidence, he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.") (internal citation omitted).

II.     AN AWARD OF BENEFITS IS APPROPRIATE.

This court has discretion to remand or reverse and award benefits. Harman v. Apfel, 211 F.3d 1172, 1175-1178 (9th Cir.), cert. denied, 531 U.S. 1038, 121 S.Ct. 628 (2000); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004); Varney v. Sec'y of Health & Human Servs. ("Varney II"), 859 F.2d 1396, 1401 (9th Cir. 1988); see also Harman, 211 F.3d at 1179 (the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings). Specifically, the court should

>           credit evidence that was rejected during the administrative process and
>           remand for an immediate award of benefits if (1) the ALJ failed to provide
>           legally sufficient reasons for rejecting the evidence; (2) there are no
>           outstanding issues that must be resolved before a determination of disability
>           can be made; and (3) it is clear from the record that the ALJ would be
>           required to find [plaintiff] disabled were such evidence credited.

Benecke, 379 F.3d at 593 (quoting Harman, 211 F.3d at 1178) ("Harman test"); Smolen, 80 F.3d at 1292.

In Varney II, the ALJ found that Varney's pain testimony was not credible and denied her application for benefits without making specific findings. 859 F.2d at 1397. The ALJ also disregarded the vocational expert's testimony that Varney would be unable to work if her pain was as severe as described. Id. The District Court affirmed the ALJ's decision and Varney appealed. Id. The Ninth Circuit granted plaintiff's request and remanded the case for further proceedings. Id. Varney then petitioned the Ninth Circuit for rehearing, and requested an order remanding the case for the immediate payment of benefits. Id.

The Ninth Circuit held that a remand for further proceedings is inappropriate "[i]n cases where there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited." Varney II, 859 F.2d at 1401. The Court found that, because Varney's counsel had examined the vocational expert as to Varney's limitations, and taking Varney's testimony as true, there was no need to remand the matter for further proceedings. Id. at 1401.

Here, the court has already concluded that the ALJ's reasons for discrediting plaintiff's subjective pain testimony and functional limitations were legally insufficient. See supra at 5-8. In addition, the court has considered and reviewed the record and applicable authority and concludes that, like Varney II, no further proceedings are necessary to develop the record. During the cross-examination of the VE, plaintiff's counsel amended the hypothetical to reflect plaintiff's limitations based on plaintiff's testimony:

1     [Plaintiff's Counsel]: If we assume a gentleman of the same age, education, and
2     the prior experience of that of [plaintiff] and who as a result of physical complaints
3     and pains, other symptomalogy as described this morning, he was having unskilled
4     work cessation in the workplace, outside of break, and that combined cessation
5     period would total one hour for the purposes of the question, 10 minutes here, 20
6     minutes there, but collectively he would be on – not performing jobs, tasks, or
7     otherwise work related assignments up to an hour per shift. And that level of
8     cessation persisted, in your opinion, could such a person perform his past
9     employment?

10     [VE]: No.

11     [Plaintiff's Counsel]: Could such a person perform[] the other jobs that you've
12     identified, the inspector or the cashier or that type of position?

13     [VE]: No, they would not.

14 (AR at 418). Thus, if plaintiff's testimony was accepted as true, the VE's testimony would
15 establish that plaintiff is unable to work.

16     In addition, the court is persuaded that crediting plaintiff's testimony that he suffers from
17 daily severe pain is sufficient to find him disabled. In Gallant v. Heckler, 753 F.2d 1450 (9th Cir.
18 1984), the Ninth Circuit concluded that the ALJ erred by rejecting significant subjective and
19 objective medical evidence regarding Gallant's complaints of chronic, disabling pain and
20 improperly emphasized plaintiff's light level of exertion without taking into account his inability to
21 sit or stand for prolonged periods of time. Id. at 1455-56. Given such strong corroborative
22 evidence of Gallant's severe pain and exertional limitations, the Ninth Circuit determined that the
23 ALJ erred in finding that Gallant's severe pain did not preclude substantial gainful activity. Id. at
24 1456. The Ninth Circuit remanded for an award of benefits, finding that there was "substantial
25 evidence in the record as a whole supporting that Gallant is disabled within the meaning of the
26 Act[.]" Id. at 1457.

27     Here, as in Gallant, the record is replete with medical evidence in addition to plaintiff's
28 testimony supporting his contention that he is precluded from substantial gainful activity because

of his pain and exertional limitations. (See AR at 228-309 & 392-418). Crediting plaintiff's testimony as true, it is clear that plaintiff is precluded from engaging in substantial gainful activity.

The court is persuaded that the only reason to remand for further administrative proceedings would be allow the ALJ to make an RFC determination a second time. See Varney II, 859 F.2d at 1400; Benecke, 379 F.3d at 595. The record is fully developed and, considering the evidence that the ALJ improperly discredited, a finding of disability is warranted in this case. Plaintiff has already waited over four years from his most recent application for a disability determination and additional proceedings would only delay his receipt of benefits. See Benecke, 379 F.3d at 595 ("Remanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand.") (internal quotations omitted). "Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." Id. at 595.

The court does not intend this decision for publication.

Based on the foregoing, IT IS ORDERED THAT Judgment shall be entered **reversing** the decision of the Commissioner denying benefits and **remanding** this matter to the Commissioner for the awarding of benefits.

Dated this 14th day of December, 2005.

/s/
Fernando M. Olguin
United States Magistrate Judge